THE D. & S. C. R. Co. ET AL. v. THE D. M. V. R. Co.

1. **Public Lands**: RIVER GRANT: RAILROAD GRANT OF MAY 15, 1856. Under the decisions of the United States Supreme Court in *Wolcott v. Des Moines Co.*, 5 Wall., 681, *Williams v. Baker*, 17 Wall., 144, and *Iowa Homestead Co. v. Valley Railroad Co.*, Id., 153, all lands situated above the Raccoon Fork of the Des Moines River, which were reserved by the land department under the river grant prior to 1856, and granted to the state to aid in the improvement of the river by the act of July 12, 1862, were excepted from the railroad grant of May 15, 1856, although a portion of such lands were not surveyed at the time of their reservation, and not certified to the state under the river grant until after the grant of 1856.

2. ——: ——: ——. The reservation under the river grant applied to the lands situated along the main channel of the river, and such lands would not be released from its operation by the subsequent certification under the grant of certain lands situated on one of its branches, under the supposition that such branch was the main river.

3. ——: ——: INDIAN TITLE. Nor would the fact that certain of the lands within the limits of the river grant were held by the Indians at the date of the reservation, and until some time in 1853, operate to defeat the title of those claiming under such grant, the reservation having taken effect as to such lands at the time the Indian title was extinguished, and prior to the grant of 1856.

*Appeal from Humboldt District Court.*

WEDNESDAY, JUNE 16.

THIS action was commenced in 1876, to quiet the title to about 10,000 acres of land in Humboldt and Pocahontas counties. The petition alleges that the lands were granted by the congress of the United States to the State of Iowa by the act of May 15, 1856, for the purpose of aiding in the construction of a railroad from Dubuque to a point on the Missouri river near Sioux City; that the lands were accepted by the State by an act of the general assembly, approved July 14, 1856, and by the same act conferred upon the Dubuque & Pacific Railroad Company, which duly accepted the grant and proceeded to so locate the line of its road that the

lands in controversy inured to it under these grants, and were duly selected thereunder, and that the plaintiffs, the Dubuque & Sioux City Railroad Company and the Iowa Homestead Company, have respectively acquired portions of the lands in controversy by conveyances set out in the pleadings, which need not be now particularly referred to here. It is also shown that the lands in question have been earned by the construction of the railroad required to be built by the grants of congress and the State, and have been duly certified to the State by the proper officers of the general government under the congressional grant.

The petition charges that the defendant, the Des Moines Valley Railroad Company, claims under the act of Congress of July 12, 1862, confirming a grant of land to the State for the improvement of the navigation of the Des Moines River by the act of congress of August 8, 1846, and that its officers and agents have procured from the secretary of the interior and the commissioner of the general land office an illegal certification of the lands in controversy to the State under the grant of July 12, 1862, which will inure to the benefit of the defendant, that corporation having acquired the lands under a grant from the State. The plaintiffs pray that the title of the lands by a proper decree be quieted in them.

The defendant in its answer claims that the lands in controversy were reserved by the proper officers of the United States under the act of congress of August 8, 1846, granting lands for the improvement of the Des Moines River, and were, therefore, by the express terms of the acts of congress of May 15, 1856, excepted from the grant under which plaintiffs claim, and that the lands were granted and confirmed to the State by the act of congress of July 12, 1862, and have been so listed and entered, and certified by the proper officers of the general government. The answer sets out the legislation under which defendant claims as the grantee of the State, which need not be recited here.

Upon a trial on the merits the District Court entered a

decree as prayed for in plaintiff's petition quieting the title of the lands in plaintiffs. The defendant appeals. The facts of the case, so far as they are necessary for a proper understanding of the points ruled in the opinion, appear therein.

*Nourse, Kauffman & Jackson*, for appellant.

*Charles A. Clark*, for appellees.

BECK, J.—I. This case involves the consideration of two grants of lands by the congress of the United States, each of

1. PUBLIC lands : river grant : railroad grant of May 15, 1856.

which, it is insisted by the parties claiming thereunder, covers the lands in controversy. The first of these grants was made to the State for the purpose of improving the navigation of the Des Moines River; the second was to aid in the construction of certain railroads. Plaintiffs claim under the second grant; defendant under the first. It is not necessary, in the view we take of the case, to set out the chain of title of either party, as it may be conceded for the purpose of our discussion, that if the lands are covered by the first grant defendant holds title thereto; if by the second, the plaintiffs are entitled to the lands.

It becomes necessary to set out the legislation by congress making these grants, and, to some extent, the legislative history of each.

The act of congress, approved August 8, 1846, granting lands for the improvement of the navigation of the Des Moines River, is as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled*, That there be, and hereby is, granted to said territory of Iowa, for the purpose of aiding said territory to improve the navigation of the Des Moines river from its mouth to the Raccoon Fork (so called) in said territory, one equal moiety, in alternate sections, of the public lands (remaining unsold and not otherwise disposed of, encumbered or appropriated), in a

strip five miles in width on each side of said river, to be
selected within said territory by an agent or agents to be ap-
pointed by the governor thereof, subject to the approval of
the secretary of the treasury of the United States.

"SECTION 2. *And be it further enacted*, That the lands
hereby granted shall not be conveyed or disposed of by said
territory, nor by any state to be formed out of the same,
except as said improvements shall progress; that is, the said
territory or state may sell so much of said lands as shall pro-
duce the sum of thirty thousand dollars, and then the sales
shall cease until the governor of said territory or state shall
certify the fact to the president of the United States that one-
half of said sum has been expended upon said improvements,
when the said territory or state may sell and convey a quan-
tity of the residue of said lands sufficient to replace the
amount expended; and thus the sales shall progress as the
proceeds thereof shall be expended, and the fact of such ex-
penditure shall be certified as aforesaid.

"SEC. 3. *And be it further enacted*, That the said river
Des Moines shall be and forever remain a public highway for
the use of the government of the United States, free from
any toll or other charge whatever, for any property of the
United States or person in their service passing through or
along the same; *provided, always*, that it shall not be com-
petent for the said Territory or future State of Iowa to dis-
pose of said lands, or any of them, at a price lower than, for
the time being, shall be the minimum price of other public
lands.

"SEC. 4. *And be it further enacted*, That whenever the
Territory of Iowa shall be admitted into the Union as a State,
the lands hereby granted for the above purpose shall be and
become the property of said state for the purpose contem-
plated in this act, and for no other; *provided*, the legislature
of the State of Iowa shall accept the said grant for the said
purpose."

This statute was, prior to 1859, often before the executive

department of the general government for construction touching the extent of the grant, or the territory to which it was applicable. The lands in controversy are above or north of the Raccoon Fork of the Des Moines River. It was sometimes held that the grant was restricted to territory below the Raccoon Fork, and quite as frequently decided that it extended to the territory above. For more than ten years there was oscillation in the views of the different executive officers of the government upon the subject. Attorney General Cushing, in an opinion upon the subject of the grant, addressed to the Secretary of the Interior, May 29, 1856, says: " The history of the case exhibits a spectacle of vacillation and contradiction of opinion on the part of the government which is humiliating to contemplate. It is discreditable to the government that its views of a law and its consequent action should be shifting about like a weather-vane, as they have done in this case." While the opinions and views of the executive officers of the government rested in this uncertainty the grant came before the United States Supreme Court, in the case of *The Dubuque & Pacific Railroad Company v. Litchfield*, 23 How., 66. It was held by the Supreme Court in that case that the grant was confined to lands between the mouth of Des Moines River and the Raccoon Fork. Up to this time the lands above the Raccoon Fork had been withheld from sale under the claim that the grant extended thereto. After the decision of the Supreme Court was announced the lands above the Raccoon Fork were still reserved from sale.

By an act of Congress, approved July 12, 1862, the claim of the State to lands above the Raccoon Fork, under the grant of Congress of August 8, 1846, was confirmed and the grant extended in conformity with the claim of the State. The statute is entitled, "An Act confirming a land claim in the State of Iowa, and for other purposes." It is as follows:

"*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

That the grant of lands to the then Territory of Iowa for the improvement of the Des Moines River, made by the act of August eighth, eighteen hundred and forty-six, is hereby extended so as to include the alternate sections (designated by odd numbers), lying within five miles of said river, between the Raccoon Fork and the northern boundary of said State; such lands are to be held and applied in accordance with the provisions of the original grant, except that the consent of Congress is hereby given to the application of a portion thereof to aid in the construction of the Keokuk, Fort Des Moines and Minnesota Railroad, in accordance with the provisions of the act of the general assembly of the State of Iowa, approved March twenty-two, eighteen hundred and fifty-eight. And if any of said lands shall have been sold or otherwise disposed of by the United States before the passage of this act, excepting those released by the United States to the grantees of the State of Iowa under the joint resolution of March second, eighteen hundred and sixty-one, the Secretary of the Interior is hereby directed to set apart an equal amount of lands within said State to be certified in lieu thereof. *Provided*, That if the said State shall have sold and conveyed any portion of the lands being within the limits of this grant the title of which has proved invalid, any lands which shall be certified to said State in lieu thereof, by virtue of the provisions of this act, shall inure to, and be held as a trust fund for the benefit of, the person or persons, respectively, whose titles shall have failed as aforesaid."

Under this act the lands in question were certified to the State, and under legislation of the State they will, if they are covered by the grants, as against plaintiffs, inure to the defendant.

By act of Congress of May 15, 1856, Congress granted to the State, for the purpose of aiding in the construction of certain railroads, " every alternate section of land, designated by odd numbers, for six sections in width on each side of said roads." Further provisions of the statute relating to

the terms of the grant need not be set out. The first section contains the following proviso:

"*And provided further*, That any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any object of internal improvement, or for any other purposes whatever, be, and the same are, hereby reserved from the operation of this act, except so far as it may be found necessary to locate the routes of said railroads through such reserved lands, in which case the right of way only shall be granted, subject to the approval of the President of the United States."

Under this grant the lands in controversy were certified to the State by the proper officers of the general government. A subsequent certification of the lands was made to the State, as inuring under the grant of July 12, 1862, for the improvement of the Des Moines River.

The Supreme Court of the United States has thrice decided, upon facts the same as those disclosed by the record before us, that the lands were conveyed to the State by the grant of July 12, 1862, for the improvement of the navigation of the Des Moines River, and that they were expressly excepted from the railroad grant of May 15, 1856, as they were at the time of the enactment reserved by competent authority for the improvement of the Des Moines River. *Wolcott v. Des Moines Co.*, 5 Wall., 681; *Williams v. Baker*, 17 Id., 144; *Homestead Co. v. Valley Railroad Co.*, Id., 153.

That these decisions correctly interpret the act of May 15th, 1856, cannot be doubted. The legislative history of the statute discloses the fact that the Committee on Public Lands of the House had before it estimates of the quantity of land which would pass by the act of May 15th, 1856, which excluded all the lands claimed under the grant for the improvement of the Des Moines River. It would thus appear that congress enacted the statute with a full knowledge that these lands were reserved by competent authority for the

improvement of the Des Moines River, and there can be no doubt that the proviso therein was intended to take the lands in question from the operation of the statute.

II. Counsel for plaintiffs insists that this case does not come within the rules of the decision of the United States Supreme Court just cited, for the reasons that there are other questions involved that were not in those cases. These questions arise upon the following facts:

1. The lands involved in this case were not surveyed until after reservation under the river grant was made, and were not certified under that grant until after the grant to the State for railroad purposes.

2. The lands reserved under the river grant, which are contemplated in the proviso incorporated in the railroad grant above quoted, were along the east branch of the Des Moines River, and not along the main stream.

3. The lands in question were within the Sioux Indian reservation at the date of the river grant, August 8th, 1846, and at the dates of the acts of the executive officers of the government reserving the lands for the improvement of the river.

We will proceed to consider the questions arising upon these alleged facts.

III. It is claimed, as a matter of fact, that the lands in controversy, and other lands claimed under the river grant, were not surveyed until after the reservation under the river grant was made. We understand that by this statement counsel mean to assert that the lands were not subdivided by what are called Congressional surveys, which are always made before public lands are put upon the market. The statement admits that the lands were reserved. If they were not surveyed, so that they could have been sold, it is difficult to see how they could have been reserved from sale. The statement of fact, if it contemplates a reservation from sales, is contradictory in itself. We know of no reason why lands may not be reserved by congress or other competent authority for law-

ful purposes before they are surveyed. Indeed, we think such cases have frequently occurred. That such lands were reserved for the river improvement in 1856, the date of the railroad grant, is settled by the decisions of the Supreme Court of the United States above cited. When such reservation was first made we need not inquire. It had been continued, and was in existence in 1856, and the lands were then surveyed. When the railroad grant was made the lands were reserved, and it matters not whether they were or were not surveyed when the reservation was first made. Under the proviso of that grant they were exempted as lands covered by an existing reservation.

IV. It is next argued that the river improvement grant must fail as to these lands, for the reason that they were not certified to the State until after the railroad grant was made. The certification of the lands did no more than identify them, and was not an act upon which the grant was made to depend. The right and title to the lands passed by the grant, the certification pointed out the subject of the grant. See *Leavenworth, Lawrence & Galveston R. Co. v. The United States*, 92 U. S., 733. Now the lands had been reserved, but not granted, until the act of July 12th, 1862. They could not have been certified before that act, for they had not been granted. Within a proper time after the grant they were certified. They were excepted from the railroad grant because of their reservation. They were granted and then certified to the State for the improvement of the river. It is very plain that the failure to certify the lands before the grant for the railroads would not defeat the proviso excepting them, and bring them within the provisions of the act.

V. It is next urged that the reservation of the lands upon which defendant's title is based was not upon the Des Moines River, but upon a tributary called in the record the East Branch, and sometimes designated upon the maps as Boone River. This position, as to the facts, is based upon the certification of about 1,100 acres upon the

East Branch in 1853, and the want of knowledge, exhibited in many instances by the executive officers of the government, that would enable them to determine which stream was the main river. The grant is of lands upon the *river*, not upon its *branch*. The lands in question are upon the main river. The reservations were made under the grant, and they must have extended to the lands on the river, including the lands in controversy. The certification of the lands upon the East Branch was an error, and was afterward corrected. If defendant or the State gained anything by the mistake, it is not a ground upon which plaintiff can defeat defendant's title. Surely it cannot be maintained that the grant of lands upon the river is affected by a mistaken selection upon the East Branch, even should such selection operate to the prejudice of plaintiffs. The grant cannot be defeated in that way. The defendant holds under the grant, and mistakes of the officers of the government cannot change the subject of the grant.

VI. It is insisted that the lands in question were, until 1853, Indian lands, having been before that date reserved by treaty for the use and occupation of the Sioux tribe of Indians, and, therefore, could not be reserved or granted to the State.

3. ——:——: Indian title.

We will not enter upon a discussion of the testimony before us, in order to determine the facts upon which the position of counsel is based. For the purpose of this case we may admit the facts to be as claimed by him, and that it was not competent for the government to grant or reserve the lands before the Indian title was extinguished.

But the Indian title was extinguished in 1853. After that date the lands in question were reserved under competent authority for the State. Such reservation in fact existed May 15, 1856, when the railroad grant was made; the United States Supreme Court has so decided in the cases above cited. It matters not if, at the date of the reservation, it was illegal because the Indian title was not extinguished. If the reser-

vation was continued and recognized after the extinguishment of that title, it was just as valid as though it had been good from the beginning. The reservation may be regarded as dating from the time the Indian title was extinguished, if at and subsequent to that time it did in fact exist, though before it had been unauthorized. As we have seen, it was competent for the executive department to reserve the lands; the United States Supreme Court so holds in the cases above cited, and further holds that when the lands were granted for railroad purposes, May 15, 1856, there was an actual reservation for the purpose of the improvement of the Des Moines river.

In this view of the case it becomes unimportant to determine whether the Indian title was extinguished to the territory in which the lands in question are situated prior to 1853, which is denied by plaintiffs' counsel. The existence of such a title, as claimed by him, is certainly immaterial, and cannot control the determination of the case.

VII. After the decision was announced in the court below the defendant made a motion for a new trial, based upon the ground of newly discovered evidence, and surprise at the trial by the introduction of evidence by plaintiffs. The evidence referred to in this motion, both newly discovered and offered at the trial, related to the point made by plaintiffs to the effect that the territory in which the lands are situated was a part of an Indian reservation, or the Indian title thereto had not been extinguished. Counsel for defendant claim that the maps and other documents bearing upon this point which were introduced by plaintiffs wrought the surprise of which they complain, and that the newly discovered evidence, which, in part, consists of the official survey of the boundary of the Indian lands as fixed by treaty, and a map exhibiting the actual protraction of the field notes of that survey—this evidence counsel insist shows that the lands in controversy were not, in 1846, when the original grant for the improvement of the navigation of the Des Moines river was made,

nor at any time thereafter, within territory reserved for the use and occupancy of the Indians.

We find it unnecessary to consider the questions raised by defendant's counsel, assailing the ruling upon this motion. It will be readily understood that this conclusion is based upon the view that, if it be true the Indian title was not extinguished until 1853, the lands were afterwards reserved, by competent authority, for the purpose of improving the navigation of the Des Moines river. If the evidence before the court below established the existence of the Indian title until 1853, the decision and the decree are not supported by the testimony before us, and, are, therefore, erroneous. We are, therefore, relieved of the duty of inquiring into the correctness of the ruling of the District Court, in overruling the motion for a new trial.

We have not noticed all the arguments made by counsel, nor discussed all the evidence in the case. The testimony is voluminous and the arguments on both sides elaborate and able, and quite extensive. We reach a very satisfactory conclusion upon the course of reasoning presented above, and under the authorities we have cited. It is impossible, in an opinion of reasonable length, to notice all the facts and arguments which support our conclusions, or to reply to all arguments urged against them. The facts and reasons upon which our decision is based we have stated fully, and, we hope, with reasonable clearness. The decree of the District Court is reversed, and a decree will be entered in this court dismissing plaintiffs' petition.

REVERSED.