BULLARD v. THE DES MOINES & FT. DODGE R'Y CO. ET AL.

1. **Des Moines River Grant:** LANDS ABOVE THE RACCOON FORK: TITLE BY PRE-EMPTION. Under the various resolutions and acts of congress, instructions of the commissioner of the general land office, and judicial decisions, referred to in the opinion, the lands in the odd numbered sections above the Raccoon Fork of the Des Moines river, at one time supposed to be included in the Des Moines river grant, *held* not to have been subject to pre-emption in May, 1862, and that the title of plaintiffs to the lands in controversy, being based upon such pre-emption, could not be sustained.

*Appeal from Humbolt District Court.*

TUESDAY, DECEMBER 11.

THE main object of this action is to determine the title and ownership of certain land described in the pleadings. There was a trial before the court, and judgment for the defendants. The plaintiff appeals.

*Edward F. Bullard, pro se.*

*J. F. Duncomb,* for appellee.

SEEVERS, J.—The plaintiff claims title to the land in controversy under certain pre-emptions made by Bicknell, Botsford and Rose in May, 1861, the payment of purchase money to the United States in July, 1867, and the issuance of patents therefor in 1869. The defendants claim that the lands were not subject to pre-emption, but had been withdrawn from market and pre-emption by the United States, and that they acquired title under the act of congress of July 12th, 1862.

As we understand, the right of this controversy depends largely or entirely on the question whether the lands were subject to pre-emption in May, 1862.

The lands in controversy are in odd numbered sections, above the Raccoon Fork of the Des Moines river, and within the grant made July 12, 1862.

Upon the supposition that the lands were included in the Des Moines river grant made by congress in 1846, they were reserved or withdrawn from sale in 1849.

In *Dubuque & Pacific R. R. Co. v. Litchfield,* 23 Howard, 66, it was held that the grant of 1846 did not extend above the Raccoon Fork, and, as the lands had been withdrawn or reserved upon the supposition above stated, and as they are situated above the Raccoon Fork, it is insisted that the effect of the decision in the above cited case was to

restore the lands above the Raccoon Fork to sale, entry or pre-emption. Whether this is so or not, we have no occasion to determine, because in May, 1860, the commissioner of the general land office made and issued the following order:

"Notice is hereby given that the lands along the Des Moines river, in Iowa, within the claimed limits of the Des Moines grant in that state, above the mouth of the Raccoon Fork of said river, which have been reserved from sale here-tofore on account of the claim of the state thereto, will con-tinue reserved, for the time being, from sale or from location, by any species of scrip or warrants, notwithstanding the recent decision of the supreme court against the claim.

"This action is deemed necessary to afford time for con-gress to consider, upon memorial or otherwise, the case of actual *bona fide* settlers, holding under titles from the state, and to make such provision, by confirmation or adjustment of the claims of such settlers, as may appear to be right and proper."

This order continued in force the reservation theretofore made, and the lands were not subject to pre-emption, because the act of congress, under which such right is claimed, pro-vides, in substance, that if the land was reserved for any purpose it was not subject to pre-emption. U. S. Statute at Large, Vol. 5, 455, § 10.

But the appellant insists:

I. That the reservation made by the commissioner of the general land office in May, 1860, was superseded by the joint resolution passed by congress on March 2, 1861, and that it was so held by the supreme court of the United States in *Crilley v. Burrows*, 17 Wall., 167. The joint resolution of · March the 2nd, 1861, is as follows: "That all the title which the United States still retains in the tracts of land along the Des Moines river, above the mouth of the Raccoon Fork thereof, which have been certified to said state impreperly by the department of the interior as a part of the grant by act of congress approved August 8, 1846, and which is now held

by *bona fide* purchasers under the state of Iowa, be, and the same is hereby, relinquished to the state of Iowa." The only effect of this resolution was to confirm all titles which were derived from the state to lands which had been wrongly certified to it. There is nothing in the resolution which directly or by implication conveys the thought that the action of the land department, reserving the lands from sale or pre-emption, was superseded thereby, and we cannot think *Crilley v. Burrows* so holds, but that it has reference to lands the title to which was other and different from those in controversy.

II. It is insisted that the lands in controversy were subject to pre-emption in May, 1862, even if they had been reserved under the act of 1846. In support of this position *Dubuque & Pacific R. R. Co. v. Litchfield*, 23 Howard, 66, is cited. We deem it sufficient to say that, in our opinion, the case cited does not sustain the claim made by counsel.

It is further insisted that the right of pre-emption exists as to all lands belonging to the United States, to which the Indian title has been extinguished, and which has not been reserved by any treaty, law or proclamation of the President of the United States. U. S. Statutes, §§ 2257-2258. This question, we think, has been determined adversely to the plaintiff in *Wolcott v. Des Moines Co.*, 5 Wall., 681; *Williams v. Baker*, 17 Id., 144, and *Homestead Co. v. Valley R. R. Co.*, Id., 153, which cases hold, as we understand, that these said lands had been reserved by competent authority. This being so, they were not subject to pre-emption during the time of the reservation so made. *D. & S. C. R. Co. v. D. M. V. R. Co.*, 54 Iowa, 89. As the lands were not subject to pre-emption in May, 1862, and the title thereto was vested in the state of Iowa by the joint resolution of March 2, 1861, and the act of Congress of July 12, 1862, as was held in *Baker v. Williams*, above cited, it seems to us that the plaintiff does not have title to the lands in controversy.

Inasmuch as the question of title to lands included in these same grants, and the question whether they were reserved by competent authority at various periods of time, have been frequently before this court and the supreme court of the United States, and have been determined, we are not disposed to extend this opinion for the purpose of considering various points made by the appellant, which necessarily, it seems to us, were involved in the cases heretofore determined. This case must be determined in accordance with legal principles, as distinguished from those which prevail in courts of equity. It would be useless to discuss such equities.

III. It is claimed that the defendant is estopped by contract from disputing the title of the plaintiff. But, as we understand, the transaction relied on as a contract is not of that character. It never was executed by the defendants, and consists of a conditional proposition made to defendants by Bicknell, under whom plaintiff claims.

It is claimed that the plaintiff was induced by false representation to purchase and pay more for a tract of land conveyed to him by defendants, on the faith and belief induced by the latter that he, plaintiff, would obtain title to all or a portion of the lands in controversy. We find that the preponderance of the evidence in this respect is against the plaintiff.

IV. The plaintiff, in case it is held that the lands in controversy belong to the defendants, insists that we proceed to determine the value of the improvements on the land. The only question considered below, under the agreement of the parties, was as to the title, and no other question will be considered by us.

                                                                                AFFIRMED.