72 U.S. 681 (____)
5 Wall. 681
WOLCOTT
v.
DES MOINES COMPANY.
Supreme Court of United States.

*683 Mr. Gilbert, for the plaintiff in error; Messrs. Litchfield and Tracy, for the defendant in error; Messrs. Trumbull, Cook, and Smith, for parties allowed to intervene.
Mr. Justice NELSON delivered the opinion of the court.
The defendants conveyed by deed-poll to the plaintiff, on the 1st August, 1859, the east half of section 17, township 88, range 27, situate in Webster County, State of Iowa, containing three hundred and twenty acres, for the consideration of $3040, and warranted the title. It is charged in the declaration that the title has failed, which is denied on the part of the defendants. This presents the main issue in the case.
On the 8th August, 1846, Congress passed an act by which they granted to the Territory of Iowa, for the purpose of aid in the improvement of the navigation of the Des Moines River, from its mouth to the Raccoon Fork, in said Territory, an equal moiety, in alternate sections, of the public lands in a strip of five miles in width on each side of said river, to be selected within said Territory by an agent of the governor, subject to the approval of the Secretary of the Treasury of the United States.
*684 The second section provided that the lands so granted should not be sold or conveyed by the Territory, nor by any State to be formed out of it, except as the improvements progressed; that is, sales might be made so as to produce the sum of thirty thousand dollars, and then cease, until the governor or State, as the case might be, should certify the fact to the President of the United States that one half of this sum had been expended on said improvements, when sales again might be made of the remaining lands sufficient to replace this amount; and the sales were thus to progress as the proceeds were expended, and the expenditure so certified to the President. Agents were appointed by the governor, who selected the sections designated by odd numbers, throughout the whole extent of the grant, which, as claimed, extended from the mouth of the river to the northern boundary of the State.
The lot in question is one of the sections thus selected and approved by the Secretary of the Treasury, and duly certified by the governor of the State to the President, according to the second section of the act, and was sold and conveyed, among other parcels of land, by the State to the defendants. The section of land of which the lot in question is a part was situated above the Raccoon Fork.
Some year and a half after the passage of this act a question arose before the commissioner of the land office whether the grant of the odd sections within the five miles extended above this Fork. He determined that it did, and that it extended throughout the whole line of the river within the limits of Iowa. It appears, however, that he afterwards changed his opinion, and on the 19th June, 1848, a proclamation was issued by the President, countersigned by him, ordering a sale of some of these odd sections, among other lands lying above the Fork, and which was to take place in the following October. On the attention of the Secretary of the Treasury being called to the subject, he, after an examination of the act, determined that, upon a true construction of it, the grant extended above the Raccoon Fork, and directed that the odd section should be reserved *685 from the sale, which was done accordingly, and the State of Iowa duly notified. This was on the 16th June, 1849. On the 6th April, 1850, the Secretary of the Interior, whose department had in the meantime been established, and to which the supervision and control of the General Land Office had been assigned, reversed the previous decision of the Secretary of the Treasury, and determined that the grant did not extend beyond the Raccoon Fork. But he directed that the lands should be reserved from sale which were embraced within the State's selections. The question was then brought before the President, and was referred by him to the Attorney-General, who differed with the Secretary of the Interior, and concurred with the Secretary of the Treasury. But before the promulgation of this decision the President (Taylor) died, and a new cabinet coming in  and among others, a new Attorney-General  he overruled the decision of his predecessor, and affirmed that of the Secretary of the Interior. The case was then brought before the new President and cabinet, and the result is stated by the then Secretary of the Interior, under date of October 29th, 1851, which was "that in view of the great conflict of opinion among the executive officers of the government, and also in view of the opinions of several eminent jurists which have been presented to me in favor of the construction contended for by the State, I am willing to recognize the claim of the State, and to approve of the selections, without prejudice to the rights, if any there be, of other parties." Under this arrangement, the Secretary of the Interior approved of the odd sections above the Fork as certified, according to the act of Congress, till, in December, 1853, the number of acres amounted to over 271,572. On the 21st March, 1856, the commissioner of the land office again decided that the grant was limited to the Raccoon Fork, and the question was again referred to the Attorney-General, who advised the Secretary of the Interior to acquiesce in the views of his predecessor (a change having taken place as to the incumbent), and to continue the approval of the lands as certified to him under the law which was done accordingly. In the meantime, the *686 improvement of the Des Moines River had been carried on by the State, and by the Des Moines Navigation and Railroad Company, who, on the 9th June, 1854, had entered into an engagement with the State to finish the improvements, as contemplated by the act of Congress, and to expend for that purpose some $1,300,000.
The question as to the true construction of this grant of 8th August, 1846, and in respect to which such great diversity of opinion existed among the executive officers of the government, came before this court, and was decided at the December Term, 1859-60. The court held that it was limited to the Raccoon Fork, and did not extend above it.[*]
Whereupon, on the 2d March, 1861, Congress passed a joint resolution providing that "all the title which the United States still retain in the tracts of land along the Des Moines River, and above the Raccoon Fork thereof, in the State of Iowa, which have been certified to said State improperly by the Department of the Interior, as part of the grant by act of Congress approved August 8th, 1846, and which is now held by bonâ fide purchasers under the State of Iowa, be, and the same is hereby relinquished to the State." And, on the 12th July, 1862, Congress enacted "that the grant of lands to the then Territory of Iowa for the improvement of the Des Moines River by the act of August 8th, 1846, is hereby extended so as to include the alternate sections (designated by odd numbers) lying within five miles of said river, between the Raccoon Fork and the northern boundary of said State; such lands are to be held and applied in accordance with the provisions of the original grant, except that the consent of Congress is hereby given to the application of a portion thereof to aid in the construction of the Keokuk, Fort Des Moines, and Minnesota Railroad, in accordance with the provisions of the act of the general assembly of the State of Iowa, approved March 22, 1858."
If the case stopped here it would be very clear that the *687 plaintiff could not recover; for, although the State possessed no title to the lot in dispute at the time of the conveyance to the Des Moines Navigation and Railroad Company, yet, having an after-acquired title by the act of Congress, it would enure to the benefit of the grantees, and so in respect to their conveyance to the plaintiff. This is in accordance with the laws of the State of Iowa.
But another act of Congress is relied on by the plaintiff, passed May 15, 1856, as showing that the United States had already parted with the lands, of which the lot in question is a part, previous to this act of 12th July, 1862. It becomes necessary, therefore, to examine this act. It grants to the State of Iowa, for the purpose of aiding in the construction of certain railroads specified, every alternate section of land (designated by odd numbers), for six sections in width on each side of said roads, with the following proviso: "That any and all lands heretofore reserved to the United States by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any objects of internal improvements, or for any purpose whatsoever, be, and the same is hereby reserved from the operation of this act, except so far as it may be found necessary to locate the routes of the said railroads through such reserved lands, in which case the right of way shall be granted, subject to the approval of the President." This grant to the State for the benefit of the railroads, it is admitted, covers the tract within which the lot in question is situate, unless excluded by this proviso. The question turns upon the construction of the proviso. And in reading it in connection with the act of 1846, granting lands to the State of Iowa for the improvement of the Des Moines River, and in connection with the serious and prolonged conflict of opinion that arose among the executive officers of the government, extending over a period of some eight years, and which related to the title above the Raccoon Fork, in respect to which this act of 1856 was dealing in the grant for the benefit of the railroads, we think it difficult to resist the conclusion that Congress, in the passage of the proviso, had specially in their minds this previous *688 grant, and conflict of opinion concerning it, and intended to reserve the lands for future disposition, if the title under the first grant should turn out to be defective. The decision of this court had not then taken place, though the litigation was probably pending in the court below, in the district of Iowa. The words of the proviso point almost directly to this grant, and to the dispute arising out of it among the public authorities: "All lands heretofore reserved," &c., "by any act of Congress, or in any other manner by competent authority, for the purpose of aiding in any objects of internal improvements," &c. These improvements of the Des Moines River were then in progress. Now, if it had turned out that the true construction of the act carried the grant above the Raccoon Fork, then the lands would have been reserved by act of Congress, and no further legislation necessary. But, not satisfied with this, as if to provide for any result in respect to the title to them, if reserved in any other manner by competent authority, for the object of internal improvements, then the enacting clause should not operate to carry them under the new grant.
It has been argued that these lands had not been reserved by competent authority, and hence that the reservation was nugatory. As we have seen, they were reserved from sale for the special purpose of aiding in the improvement of the Des Moines River  first, by the Secretary of the Treasury, when the Land Department was under his supervision and control, and again by the Secretary of the Interior, after the establishment of this department, to which the duties were assigned, and afterwards continued by this department under instructions from the President and cabinet. Besides, if this power was not competent, which we think it was ever since the establishment of the Land Department, and which has been exercised down to the present time, the grant of 8th August, 1846, carried along with it, by necessary implication, not only the power, but the duty, of the Land Office to reserve from sale the lands embraced in the grant. Otherwise its object might be utterly defeated. Hence, immediately upon a grant being made by Congress for any of *689 these public purposes to a State, notice is given by the commissioner of the land office to the registers and receivers to stop all sales, either public or by private entry. Such notice was given the same day the grant was made, in 1856, for the benefit of these railroads. That there was a dispute existing as to the extent of the grant of 1846 in no way affects the question. The serious conflict of opinion among the public authorities on the subject made it the duty of the land officers to withhold the sales and reserve them to the United States till it was ultimately disposed of.
It should be stated, also, in connection with this proviso, that the improvements of this river were in progress at the time of the passage of the act of 1856, and had been for years, but were suspended soon after, on account of the refusal of the Land Department to certify any more sections under the act of 1846; and, as appears from the certificate of the governor of Iowa, the sum of $332,634.04 had already been expended by these defendants under their contract.
JUDGMENT AFFIRMED

NOTE.
At the same time, with the preceding case, was adjudged Des Moines Navigation and Railroad Company v. Burr, which NELSON, J., delivering the judgment of the court, said, "involved the same questions" decided in it. He referred to the opinion there given as decisive of them. The judgment was reversed with a venire de novo.
NOTES
[*] Dubuque and Pacific Railroad Company v. Litchfield, 23 Howard, 66