The opinion of the court was delivered by
Brewer, J.:
This was an action of ejectment, brought by plaintiff in error, plaintiff below, to recover possession of a tract of land in Allen county. The Case was tried by the court without a jury, and was submitted upon a certain agreed statement of facts. Upon such agreed statement the district court found for the defendant, and to review such decision this proceeding in error has been brought.
The vital question in this case is one whigh must ultimately be decided by the supreme court of the United States. While but a single tract of land is in controversy, there are many thousands of acres the title to which rests upon the decision of this question. Ordinarily, when a question of such moment is before us, we should feel called upon, not merely to announce our' conclusions, but to give at some length our reasons therefor; but inasmuch as the final decision does not rest with us, as this case is, as we understand it, simply passing through this court on its way to the supreme court of the United States, and as very full and exhaustive briefs have been filed on both sides, in which all the considerations have been presented with great clearness and ability, we shall content ourselves with simply stating, in a few words, our conclusions. The agreed statement is as follows:
(Court and title omitted.) “It is hereby agreed between the parties hereto, that the above case shall be tried, submitted, and determined by the court, upon the following statment of the facts, which is a true and full statement of the facts of the case, to wit:
“1. The land in controversy was, on and prior to March 3, 1863, ‘public land’ of the United States, and subject to homestead and preemption entry under the laws of the United States.
“2. The said land is not situated within ten miles of the line of the Leavenworth, Lawrence & Galveston .railroad company, (formerly called the Leavenworth, Lawrence & Fort Gibson railroad company,) nor within ten miles of the *51 line of the Missouri, Kansas & Texas railroad company, (formerly called the Union Pacific railroad company, southern branch,) but is more than ten miles from the line of either of said railroads, and is within the twenty-mile or indemnity limits of both of said railroads, under the grants made by the acts of congress of March 3, 1863, (12 U. S. Stat. 772"; Gen. Stat. of Kansas, p. 885,) and of July 26, 1866, (14 U. S. Stat. 289.) !
“3. The said land is situated where, by reason of the juxtaposition of said Leavenworth, Lawrence & Galveston, and Missouri, Kansas & Texas railroad companies’ lines, their indemnity or twenty-mile limits overlap each other.
“ 4. The said land is not situated within fifty miles of the Atchison, Topeka & Santa .Fé railroad, nor •.within fifty miles of any line or branch of railroad constructed by the Atchison, Topeka & Santa Fé railroad company, but would have been within twenty miles of the terminal limits of the Neosho valley branch of said railroad if the same had been constructed ‘down said Neosho valley to the point where the Leavenworth, Lawrence & Fort Gibson railroad enters said Neosho valley,’ as provided by the act of the legislature of Kansas of February 9, 1864; (Gen. Stat. of Kansas 1868, p. 885;) that is to say, said land would have been beyond the end and within twenty miles of the point where said branch intersected the Leavenworth, Lawrence & Fort Gibson railroad, but would not have been within a strip twenty miles wide lying parallel to said branch on either side thereof, if the same had been constructed.
“ 5. On May 5,1863, the commissioner of the general land office transmitted to the register and receiver of the United States land office at Humboldt, Kansas, in which district said land is, a diagram of the probable route of the Leavenworth, Lawrence & Galveston railroad, and a letter withdrawing certain lands from market, pursuant to the said act of March 3, 1863, (12 U. S. Stat. 772,) a copy of which letter of withdrawal is hereto attached, marked ‘A,’ and made a part hereof.
“ 6. By the said diagram of the probable line of said railroad, upon which said withdrawal was ordered, the land in controversy came within the ten-mile limits of the Leavenworth, Lawrence & Galveston railroad, and was accordingly withdrawn from preemption and homestead entry, and has never since been restored to sale by the government, unless *52 the act of July 24, 1876, (19 U. S. Stat. 101,) had that effect.
“7. The said Leavenworth, Lawrence & Galveston railroad was not constructed upon the line defined by the diagram transmitted in the letter of the commissioner of the general land office, marked ‘A,’ but was constructed upon a different line; and on the 10th day of May, 1867, the commissioner of the general land office transmitted to the said register and receiver another diagram, showing the actual location of said railroad, by which diagram the land in controversy was shown to be within the twenty-mile limit .of said Leavenworth, Lawrence & Galveston railroad; but by said letter the land in controversy was directed to be withdrawn as within the indemnity limits and as indemnity under the said act of March 3, 1863, for sáid Leavenworth, Lawrence & Galveston railroad company, which withdrawal was made accordingly: A copy of said letter of withdrawal is attached hereto, marked ‘B.’
“8. On the 3d day of April, 1867, the commissioner of the general land office transmitted to said register and receiver a diagram of the Missouri, Kansas & Texas railroad line, and directed a withdrawal of odd sections for twenty miles on each side, under said act of July 26, 1866. A copy of the letter of withdrawal is attached, marked 1C.’ The land in controversy fell outside of ten miles and within twenty miles of said line, and had already been reserved and withdrawn from sale for the Leavenworth, Lawrence & Galveston railroad under the act of March 3, 1863, by direction of the commissioner of the general land office.
“9. The said Leavenworth, Lawrence & Galveston railroad company did not within ten years construct its road from Leavenworth to Lawrence, nor its branch 'from Lawrence, by the valley of the Wakarusa river, to the point on the Atchison, Topeka & Santa Fé Railroad where said road intersects the Neosho river/ nor has said road from Leavenworth to Lawrence, or said branch, ever been constructed as required by the said act of congress of March 3, 1863, and said act of the Kansas legislature of February 9, 1864. The commissioner of the general land office decided, October 8, 1874, that, by reason of the failure of said Leavenworth, Lawrence & Galveston railroad company to construct said road and branch, it had forfeited and was not entitled to any indemnity lands, and it has never recovered or received any.
*53 “10. The branch of the Atchison, Topeka & Santa Fé railroad, required by the said act of congress of March 3, 1863, and of the Kansas legislature of February 9, 1864, to be constructed ‘down the Neosho valley to the point where the Leavenworth, Lawrence & Galveston railroad enters said valley/ was not constructed within ten years; nor has the same ever been built or constructed.
“11. On the 8th day of August, 1872, the Missouri, Kansas & Texas and the Leavenworth, Lawrence & Galveston railroad companies jointly selected certain lands, (among which is the tract in controversy,) as indemnity lands, which they claimed under.the act of March 3, 1863. These selections were certified the same day by the register and receiver, and submitted to the commissioner of the general land office, and on the 17th day of December, 1872, the Leavenworth, Lawrence & Galveston railroad company filed in the said commissioner’s office an assignment, dated December 13, 1872, relinquishing all its right, title and interest in the land so jointly selected as indemnity (including the tract of land in controversy) to the Missouri, Kansas & Texas railway company, its successors and assigns, and requesting that patents issue to the said Missouri, Kansas & Texas railway company.
“12. The Atchison, Topeka & Santa Fé railroad company, on the 19th day of March, 1866, in consideration of one dollar, assigned its right, franchises and land grant under said act of March 3, 1863, for its Neosho valley branch, to the Missouri, Kansas & Texas railway company, and on the 26th day of February, 1867, this assignment was ratified by resolution of the Kansas legislature, which appears in the Kansas Session Laws of 1867, p. 180, ch. 102, and is referred to and made a part hereof as fully as though copied and set out herein.
“13. If the Neosho valley branch of the Atchison, Topeka & Santa Fé railroad had been constructed ‘down said Neosho valley to the point where the Leavenworth, Lawrence & Fort Gibson railroad enters said Neosho valley/ said branch would have intersected said Leavenworth, Lawrence & Fort Gibson railroad at right angles on its west side, and the land in controversy lies eighteen miles east of said Leavenworth, Lawrence & Fort Gibson railroad.
“14. The Missouri, Kansas & Texas railway company constructed its road from Emporia, a point where the Atchison, Topeka & Santa Fé railroad crosses the Neosho river, to Chanute, a point where said Missouri, Kansas & Texas rail *54 way intersects the Leavenworth, Lawrence & Galveston railroad, in the year 1870, but said point of intersection is thirty miles from the point where the Leavenworth, Lawrence & Fort Gibson railroad enters the Neosho valley, and on the opposite side of the Neosho river from where said Leavenworth, Lawrence & Galveston railroad enters said Neosho valley, and in a different county. The Missouri, Kansas & Texas railway company received the lands granted it by said act of July 26, 1866, for constructing its said road.
“15. On the 19th day of April, 1873, the commissioner of the general land office certified the lands embraced in the joint selection referred to in the preceding paragraph number 11, (and which includes the tract of land in controversy,) to the state of Kansas, as for the benefit of the Missouri, Kansas & Texas railway company, under said act of March 3,1863, and on the 19th day of May, 1873, a patent was, by the governor of the state of Kansas, issued to said Missouri, Kansas & Texas railway company for the same, a copy of which patent is attached hereto, marked ‘D/ and made a part hereof. The only right said railroad company had to receive said patent is hereinbefore set out.
“16. The United States has never issued a patent for the land in controversy to the Missouri, Kansas & Texas railway company, or any other corporation or person, and the only title the said Missouri, Kansas & Texas railway company ever had to said land is said patent, marked ‘D.’
“ 17. The Missouri, Kansas & Texas railway company, on the 9th day of October, 1871, executed to the Leavenworth, Lawrence & Galveston railroad company a deed, of which a copy is hereto attached, marked ‘ E/ and made a part hereof. Said deed was recorded in the office of the register of Allen county, Kansas, on the 10th day of October, 1871, in book H of deeds, on page 593.
“ 18. The said Missouri, Kansas & Texas railway company, on the 8th day of February, 1872, executed to the Leavenworth, Lawrence & Galveston railroad company a deed, of which a copy is hereto attached, marked ‘F/ and made a part hereof. Said deed is recorded in the office of the register of deeds of Allen county, Kansas, in book K of deeds, at page 320.
“19. The Leavenworth, Lawrence & Galveston railroad company afterward executed a deed for said land to plaintiff.
“20. The defendant, subsequent to the passage of the act' . of congress of July 24, 1876, (19 U. S. Stat. 101,) possessed *55 all the qualifications required by the laws of the United States of purchasers under the preemption and homestead laws. Subsequent to said July 24, 1876, the defendant, in good faith, and with intent to make settlement upon and purchase the land in controversy under the homestead laws of the United States, settled upon eighty acres of land, being the E. J of the N.E.-jjj of section 29,-township -25, range 20, in Allen county, Kansas, and of which the land in controversy is a part, made all the improvements required by the homestead laws, ánd went to the" proper land office of the United States, in due time, and requested to be permitted to file upon and enter the same under the said homestead laws, and tendered and offered sufficient proof of his said qualifications and settlement, and tendered and offered to pay all'sums due the government, and all fees of the officers, and to do all other acts necessary to entitle him to purchase said land under the homestead laws; but the said officers of the said United States land office refused to permit defendant to file upon, make proof of settlement and cultivation, or to purchase said land under the said homestead-laws, for the sole reason that said patent' had been issued to "said Missouri, Kansas & Texas railway company by the state of Kansas; and said defendant has ever since' occupied and cultivated said eighty acres of land, and claims the right to possess and occupy the same under the homestead laws of the United States.
“21. On the 2d of December, 1866, the Union Pacific road, southern branch, filed with the secretary of the interior the map spoken of in section 4 of the act of July 26, 1866.
“22. Wherever, in the foregoing statement of facts, mention is made of the point where the road from Lawrence ‘entered the Neosho valley/ the point thereby intended is the point where said road first enters upon land drained by said river or its tributaries.
Cates & Keplinger, Attorneys for Plaintiff.
C. F. Hutchings, Attorney for Defendant.”
The following are copies of letters withdrawing lands from sale:
A.
[Received at Humboldt May 5,1863.]
General Land Oeeice, March 19, 1863.
Register and Receiver, Humboldt, Kansas — Gentlemen: The act of congress approved March 3, 1863, makes a grant *56 of alternate sections of land to Kansas, to aid in the construction, “first, of a railroad and telegraph from the city of Leavenworth, by the way of the town of Lawrence, and via the Ohio City crossing of the Osage river, to the southern line of the state,” “with a branch from Lawrence, by the valley of the Wakarusa river, to the point on the Atchison, Topeka & Santa Fé railroad where said road intersects the Neosho river; second, from Atchison, via Topeka, to the western line of the state, in the direction of Fort Union,” &c., “with a branch from where this last-named road crosses the Neosho, down said Neosho valley to the point where the said first-named road-enters the said Neosho valley.”
This law concedes “every alternate section of land, designated by odd numbers, for ten sections in width, on each side of said roads and each of its branches.”
The first section further provides that, where lands thus-granted have been sold, reserved, or otherwise appropriated,' or the rights of preemption or homestead settlements have attached, other lands, designated by odd numbers, in no case to-be located further than twenty miles from the lines of said roads and branches, shall be selected by direction of the secretary of the interior, &c.
The second section requires the reserved (even) sections within the ten-mile limits to be sold at not less than double the minimum price of the public lands. No such section can, however, be sold at private entry until after it shall have been first offered at or above the increased minimum price : “ Provided, That actual and bona fide settlers under the provisions of the preemption and homestead laws of the United States may, after due proof of settlement, improvement, cultivation and occupation as now provided by law, purchase the same at the increased minimum price aforesaid: And provided, also, That settlers on any of said reserved sections under the provisions of the homestead law who improve, occupy and cultivate the same for a period of five years, and comply with the several conditions and requirements of said act, shall be entitled to patents for an amount not exceeding eighty acres each, anything in this act to the contrary notwithstanding.”
The senators and representatives in congress from Kansas have requested the withdrawal of the lands along the lines or routes of the railroads and branches provided for in this act. I inclose a diagram showing the probable lines of said roads and branches, with the toi-mile limits on each side, *57 (colored green;) and you are hereby directed to withhold from ordinary private sale or location, and also from preemption and homestead, with the qualification hereinafter indicated, all the public lands in your district and lying within the ten-mile limits as designated on said diagram. Where said lines pass through the surveyed lands, the register will proceed at once to lay down, in lead pencil, on the township plat, the ten-mile limits of the reserve, on each side thereof, and make the proper notes thereon showing that the lands embraced within said limits are reserved from sale or entry. And as the surveys progress and the township plats are received, he will proceed in like manner to lay down the limits of the reservation and make similar notes, and immediately report the same to this office, so that this order may be strictly observed by withholding the lands in said limits. In virtue, however, of the laws of 1853 and 1854, interests of two classes of settlers are provided for and protected, to wit:
1st. By the said act of March 27, 1854, (vol. 10, p. 269,) preémptors either upon the odd or even sections, who had actually settled before the receipt at your office of this order of withdrawal, have the right, upon establishing their claims according to law, to pay for them at $ 1.25 per acre, or in virtue of the act of March 22, 1852, to locate the same with warrants.
2d. In accordance with the said act of March 3, 1853, (vol. 10, p. 244,) any preemptor who, subsequent to the receipt as aforesaid, of the order of withdrawal, and prior to the final allotment of the alternate sections to the railroad, may settle upon and improve the even-numbered (not odd) sections, and who shall establish their preemptions according to law, have a right to do so before the same are offered at public sale, rating the land at $2.50 per acre, with the right to pay for the same in cash, or as stipulated in the last proviso to the first section of the act of March 22, 1852, (vol. 10, p. 3,) to pay part in warrants at $1.25, and the residue in cash.
I would also call your attention to the first section of the homestead act, wherein it is provided “that any person,” &c., &c., “shall” be entitled to enter one quarter-section or a less quantity of unappropriated public land, upon which said person may have filed a preemption claim, or which may, at the time the application is made, be subject to preemption at $1.25 or less per acre, or eighty acres, or less, of such unappropriated lands at $2.50 per acre, &c.’
*58 You will, therefore, understand from the foregoing:
1st. That the odd sections within the limits of said railroads and branches are absolutely withdrawn from sale, preemption, or homestead entry, except so far as inceptive rights may have accrued prior to the receipt by you of this order.
2d. That, under the provisions of the acts of 1853 and 1862, the even sections will only be subject to preemption at $2.50 per. acre from that date, and dealt with at that ratability under the homestead.
This order will take effect from the date of its reception at your office, and you will advise this office of the precise time it may be received by you..
Very respectfully, your obedient servant,
J. M. Edmunds, Commissioner.
B.
[Beceived at Humboldt, May 10, 1867.]
Department op the Interior,
General Land Oppice, April 30, 1867.

Register and Receiver, Humboldt, Kansas: Under date of March 19, 1863, I transmitted to you a diagram, showing the designated line of route, with the ten-mile or granted . limits of the Leavenworth, Lawrence & Galveston railroad, for which a grant of land is made to Kansas by the act of congress approved March 3, 1863.
By my letter accompanying the diagram, I ordered, with the approval of the secretary, that the odd’ sections within said limits should be withheld from further sale or location, preemption or homestead entries, except where inceptive preemption rights had attached prior to withdrawal, and directed , that the even sections should be held subject to preemption and homestead entry, at $2.50 per acre.
Herewith I inclose a map of the actual location of the route of said road, with that portion of the ten and twenty-mile limits designated by sectional lines as falling within your district. You will now withhold from sale or location, preemption or homestead entries, all the odd sections within the limits of twenty miles, as laid down on the accompanying diagram, the even sections within the ten-mile limits being held at $2.50, as under the former withdrawal.
Where settlements may be shown to have been made’upon an even section, falling within the lines of the ten-mile limits as originally withdrawn, and within the ten-mile limits, as shown
*59 on the present diagram, you will allow the party to prove up and pay for the land at the ordinary minimum price, provided said settlement was made prior to the receipt by you of this order of withdrawal; and for your guidance in this matter, I have marked on the diagram the line of original withdrawal. Also, where settlement may have been made on an odd-numbered section outside of the ten and within the twenty-mile limits, prior to the receipt by you of this order of withdrawal, the settler will be protected in his rights by reason of such prior settlement.
Be pleased to acknowledge the date of the receipt of this letter.
Very respectfully, your obedient servant,
Jos. S. Wilson, Commissioner.

G.

■ [Received at Humboldt April 3,1867.]
Department of the Interior,
General Land Office, March 19, 1867.

Register and Receiver, Humboldt, Kansas — Gentlemen: Under the act of congress approved July 26, 1866, (Pamph. Laws, 1866, p. 289,) there is granted to Kansas, to aid in the construction of a railroad by the “Union Pacific railroad company, southern branch,” from “Fort Riley, Kansas, or near said military reservation, thence down the valley of the Neosho river to the southern line of the state,” every alternate section of land, or part thereof, designated by odd numbers, to the extent of five alternate sections per mile on each side of said road, and -not exceeding in all ten sections per mile; and'where any of said sections have been reserved, sold, preempted, or otherwise disposed of by the United States, then there is to' be reserved, “for the purposes aforesaid,” “from the public lands of the United States, nearest to the sections above specified, so much land as shall be equal to the amount of such lands as the United States have sold, reserved, or otherwise appropriated,” &c., “ provided, that said lands hereby granted shall not be selected beyond twenty miles from the line of said road.”
■ The second section of the act increases the price of the even sections within ten miles on each side of said road to double the minimum price, provided that actual bona fide settlers under the preemption laws may, upon due proof, etc., purchase the same at the price fixed for said land at the date of set *60 tlement; and provided that homestead settlers may take eighty acres each of such double-minimum land.
The fourth section requires that the lands granted shall be withdrawn as soon as the company shall file a map of its line of route.
The company having duly filed a line of route in this office, through the secretary of the interior, I inclose a diagram of that part coming within the limits of your district, with the ten and twenty-mile limits on each side of the road laid down thereon.
You will, upon its receipt, proceed to mark on your plats the limits as thereon designated, and will reserve from sale, location, or entry of any kind, except in case of bona fide preemptions initiated prior to withdrawal, all the odd-numbered sections within the ¿en-mile limits, and all the vacant lands between the ten and twenty-mile limits.
The even sections within the ten-mile or granted limits you will withdraw from private entry, and the same will only be subject to preemption and homestead entry at the rate of $2.50 per acre until regularly offered at public sale, except in cases of bona fide preemptions where settlement was made prior to this withdrawal, wherein the party may make proof and pay for the same at $1.25 per acre.
Be pleased to acknowledge the date of receipt of this, from which time the same becomes effective.
Very respectfully,
Jos. S. Wilson, Commissioner.
D.
The State of Kansas, to all to whom these presents shall eome — Greeting: Whereas, the Missouri, Kansas & Texas railway company, having constructed a railroad and telegraph line from Junction City to the southern boundary of the state of Kansas, is entitled, under the provisions of the act of congress, approved March 3, one thousand eight hundred and sixty-three, (1863,) entitled “An act for a grant of lands to the state of Kansas in alternate sections, to aid in the construction of certain railroads and telegraphs in said state,” and of the act of the legislature of the state of Kansas, approved February 9, one thousand eight hundred and sixty-four, (1864,) entitled “An act to accept a grant of lands made to the state of Kansas by the congress of the United States, to aid in the construction of certain railroads and *61 telegraphs in said state, and to apply the same to the construction of such railroads and telegraphs,” to the following-described tracts of land, as certified by the commissioner of the general land office and approved by the secretary of the interior, April 10, one thousand eight hundred and seventy-three, (1873,) said to contain twenty-seven thousand seven hundred and thirty-two and fifty one-hundredths acres, namely: . . . The northeast quarter of section number twenty-nine, in township number twenty-five, south, of range number twenty, east: . . .
Now know ye, that the state of Kansas, in consideration of the premises, and in conformity with the said laws, has given and granted, and by these presents does give and grant unto the Missouri, Kansas & Texas railway company and assigns the said tracts above described, to have and to hold the same, together with all rights, privileges, immunities and appurtenances of whatsoever nature accruing under the provisions of the laws relating thereto, and in accordance with the act of congress of March 3, 1863, set forth in the foregoing, subject to all its conditions, and to any valid interfering rights which may exist to any of the tracts embraced in the foregoing.
In testimony whereof, I, Thomas A. Osborn, governor of the state of Kansas, have caused these letters to be made patent, and the seal of the state to be hereunto affixed. Given under my hand, this nineteenth (19th) day of May, in the year of our Lord one thousand eight hundred and seventy-three, and of the independence of the United States the ninety-seventh, and of the thirteenth year of the state.
Thomas A. Osborn.
By the Governor.
[l. s.] W. H. Smallwood, Secretary of State.
E.
Know all men by these presents, That the Leavenworth, Lawrence & Galveston railroad company and the Missouri, Kansas & Texas railroad company, by their agreement, made and entered into, February 20, A. D. 1871, and said agreement having been duly and subsequently ratified by the boards of directors, of said companies, did determine upon the basis of a partition of certain lands situated in the state of Kansas, and granted to said companies by the United States and by the state of Kansas, the said state having received *62 the same from the United States, and lying within the conflicting land-grant limits of the roads of said companies in said state of Kansas, and inasmuch as the partitions and divisions of said lands contemplated in said agreement have been made, so far as the lands hereinafter mentioned are concerned, to the mutual satisfaction of said companies:
Now, therefore, in pursuance of said agreement, and in consideration of one dollar, to be in hand paid, the said Missouri, Kansas & Texas railway company, party of the -first part, doth grant, bargain, sell, release, and quitclaim unto the said Leavenworth, Lawrence & Galveston railroad company, party of the second part, the following tracts of land, lying and being situate in the state of Kansas, to wit: Section 29, township 25, south, of range 20, ... in Allen county. And the said party of the first part doth hereby covenant and agree to and with the party of the second part-, that it has not made, suffered, or caused to be made, any conveyance, lien, or incumbrance of any nature whatsoever on the above-described lands, or any part thereof, and that it will forever warrant and defend the title to said lands, and every part thereof, against all persons whomsoever claiming by, through, or under the party of the first part, but against none other. And the party of the first part further covenants and agrees to and with the party of the second part, that this instrument .shall operate to convey to the party of the second part any other or further title that the party of the first part may hereafter acquire or receive through or by virtue of any law of the United States, or of the state of Kansas, or treaty of the United States with any Indian tribe, to said above-described lands, or any parcel thereof; and hereby further covenants and agrees to execute and deliver to said party of the second part, its successors and assigns, any further assurance or conveyance which may be necessary to carry out and effectuate the object and purpose of this instrument.
In witness whereof, the party of the first part has affixed its corporate seal unto this instrument, and caused the same to be signed by its president, this 9th day of October, A. D. 1871.
MISSOURI, KANSAS & TEXAS RAILWAY COMPANY,
[seal.] By Levi Parsons, President.
Attest: H. B. Henson, Secretary.
[Here follows the acknowledgment of the above instrument.]
*63 F.
This indenture, made this twenty-eighth day of February, one thousand eight hundred and seventy-two (1872), between the Missouri, Kansas & Texas railway company and Russel Sage and N. A. Cowdry, trustees of the Missouri, Kansas & Texas railway company (late Union Pacific railway company, southern branch), under and by virtue of a mortgage or deed of trust, dated November 4, 1868, and the Union trust company, of New York, trustees under a mortgage' or deed of trust, executed by said railway company, dated February 1, 1871, of the first part, and the Leavenworth, Lawrence & Galveston railroad company of the second part:
Witnesseth, That whereas, the said Missouri, Kansas & Texas railway company did, on the ninth day of October, one thousand eight hundred and seventy-one, in pursuance of an agreement made and entered into by and between said last-named company and said party of the second part, and in consideration of one dollar in hand paid, grant, bargain, sell, release, and quitclaim unto the said Leavenworth, Lawrence & Galveston railroad company the tracts of land hereinafter described, and lying and being in the state of Kansas;
And whereas, said deed was executed for the purpose of partitioning said tracts of land according to the stipulations of said agreement of February 20, A. D. 1871, and upon the understanding, and according to the recital therein, that the state of Kansas had received title to said lands, from the United States;
And whereas, it appears that the United States did not list or convey said tracts of lands to the state of Kansas until subsequent to the execution of said deed of October 9, 1871, and thus listed or conveyed said tracts by proportions and descriptions, differing from those recited in the aforesaid agreement of February 20, 1871, and the deed of October 9, 1871, and in pursuance thereof;
And whereas, a doubt has arisen as to the sufficiency of said deed, and the said Leavenworth, Lawrence & Galveston railroad company requiring a further assurance of said land:
Now, therefore, this indenture witnesseth, that in consideration of the premises aforesaid, and for the confirmation of said deed of October 9,1871, as also for and in consideration of the sum of one dollar, in hand paid, the Missouri, Kansas & Texas railway company hath granted, bargained, sold, aliened, enfeoffed, released and conveyed, and does by these *64 presents grant, bargain, sell, alien, enfeoff, release and convey unto the said Leavenworth, Lawrence & Galveston railroad company, its successors and assigns, the following tracts of land, lying and being in the state of Kansas, viz.: . . Northeast quarter of section twenty-nine, township twenty-fivé, south, of range twenty. . . . And the said party of the first part doth hereby covenant and agree, to and with the party of the second part, that it has not made, suffered, or caused to be made, any conveyance, lien, or any incumbrance of any nature whatsoever, excepting the mortgages or trust deeds hereinbefore mentioned on the above described, or any part thereof, and that it will forever warrant and defend the title to said lands, and every part thereof against all persons whomsoever, claiming by, through, or under the party of the first part, but against none other. And the party of the first part further covenants and agrees, to and with the party of the second part, that this instrument shall operate to convey to the party of the second part any other or further title that the party of the first part may hereafter acquire or receive, through, or by, or in virtue of any law of the United States, or of the state of Kansas, or treaty of the United States with any Indian tribe to said above-described lands or any parcel thereof; and hereby agrees, covenants and agrees to execute and deliver to said party of the second part, its successors and assigns, any further assurance or conveyance which may be necessary to carry out and effectuate the object and purpose of this instrument. And the said Russel Sage and N. A. Cowdry, trustees as aforesaid, and the Union trust company of New York, also trustees as aforesaid, do by these presents, under and by virtue of the mortgages or trust deeds heretofore referred to, and in consideration of the premises aforesaid, release and convey to the said party of the second part, all their right, title and interest, property, possession, claim, demand and estate of the said trustees in and to the above-granted premises, in accordance with the terms and conditions of said mortgages or trust deeds.
This release on the part of the aforesaid trustees, is made for the purpose of carrying into effect a compromise or settlement of conflicting claims to portions of the mortgaged premises, by said railroad companies.
In witness whereof, the said Missouri, Kansas & Texas railway company and the Union trust company of New York have caused these presents to be signed by their respective presidents and secretaries, with the seals of the *65 respective corporations attached, and the said Russel Sage and N. A. Cowdry, trustees, have hereunto set their hands and seals,'the day and year first above written.
[l. s.] x Levi 'Parsons,

President of the Missouri, Kansas & Texas R. R. Co.

Attest: H. B. Benson,
. Secretary of the Missouri, Kansas & Texas R. R. Co. [seal.] Union Trust Company op New York.
By J. N. Frothingham, President, [l. s.]
C. T. Carlton, Secretary. [l. s.]
Russel Sage,
N. A. Cowdry,

m ■ . trustees.

[l. s.l
[l. s.]
[The acknowledgment of the above instrument follows here.]
Upon these facts, we remark, that the patent from the state amounts to no more than a deed from an individual. If the grantor has no title, neither patent nor deed conveys anything. The state is not the primary owner of the soil, and until title is shown from the United States to the state, a patent from the state of Kansas is no more than mere waste paper. The United States is the primary owner of the soil, and, until title is shown away from such owner, patents, deeds or conveyances amount to nothing. Now the .plaintiff claims by virtue of two acts — one making land grants for the benefit of the L. L. & G. Rld. Co. and the A. T. & S. F. Rld. Co., (12 U. S. Stat. at Large, 772,) and the other by virtue of a similar grant for the M. K. & T. Rly. Co. (14 U. S. Stat. at Large, 289.) Upon one or the other of these acts plaintiff’s title must rest. If either or both give him no title, it is a matter immaterial .by what right defendant occupies the land in controversy. The real owner alone can question such possession; and if neither of the railroad companies named ever had any title, the ruling of the district court must be affirmed, whether the defendant be a mere trespasser, or has title of one kind Or another. The plaintiff claims by virtue of the act of congress of 1863. (12 U. S; Stat. at Large, p. 772.) The patent purports to be issued under the authority of such act. That act contained a grant in place, and also a provision for indemnity lands. The *66 same may be said as to the act of congress of 1866. (14 U. S. Stat. at Large, 289.) The land in controversy is not within the limits of the grant in place of either act; but being within twenty miles of each road, it is within the indemnity limit. In other words, neither the L. L. & G., the A* T. & S. F., nor the M. K. & T. Rly. Co. can claim this tract as a part of its direct grant. If it passed at all, it passed among the indemnity lands. Looking now to the act of 1863, under which, as stated, the patent purports to have been issued, it appears that it contemplated a land grant for two roads — one.from Leavenworth, via Lawrence, to the southern line of the state; the second from Atchison, via Topeka, toward the southwest of the state, with a branch down the Neosho valley to a connection with the first road* It thus appears that there are three possible channels by which title might have passed to the plaintiff: first, through, the grant to the L. L. & G. Rid. Co.; second, through that to the A. T. & S. F. Rid. Co.; and third, through the grant to the M. K. & T. Rly. Co. Of these in their order.
First, it did not pass through the grant to the L. L. & G. Rid. Co. This is very evident. Indeed, counsel for that company, who has filed a brief in this case, concedes that it could not. The act, § 4, clearly contemplates that no part of the indemnity lands shall -be earned by or passed to the road until the entire completion of the road and its branches, and adds: “That if any part of said roads and branches is not completed within ten years from the passage of this act, no further sale shall be. made, and the lands unsold shall revert to the United States.” The L. L. & G. road was not. completed within ten years. The commissioner of the general land office decided that by reason of such failure to construct its road, it had forfeited and was not entitled to any of the indemnity lands. (Paragraph 9 of the findings of fact.) Congress, by act of July 24, 1876, (19 U. S. Stat. at Large, 101,) asserted a forfeiture of all said indemnity lands, if any legislative declaration or forfeiture was needed. (The *67 State v. Emmert, 19 Kas. 546: Schulenberg v. Harriman, 21 Wall. 63.)
Second, it did not pass under the grant to the A. T. & S. E. Rid. Co., because the branch has never been completed; and if it had been, the land was beyond the terminus of such branch, and not on either side of it. (Paragraphs 4, 10, and 13.) The grant to this branch terminated, at the point where the L. L. & G. Rid. enters the Neosho valley, (section one of said act,) and granted lands on either side, but none beyond the terminus; so if the branch had been constructed, this land could not have been selected, and could not have passed to the company. No act of department officers could extend the scope of the grant, or pass title to any lands beyond its terms.
• Third, it did not pass to the M. K. & T. Rly. Co. under the act of 1866, because the state had nothing to do with the transfer of title to lands under that act, and a patent from the governor would amount to nothing, because the road received its full grant of lands under said act, irrespective of these lands, (findings of fact, paragraph 14,) and. because the lands were reserved by the act of 1863 and were never within the reach of the grant of 1866. (Wolcott v. Des Moines Navigation Co., 5 Wall. 681; United States v. L. L. & G. Rld. Co., 2 Otto, 734; M. K. & T. Rly. Co. v. K. P. Rly. Co., 7 Otto, 497.) For these reasons we think the plaintiff took no title, and therefore a judgment in favor of the defendant is correct, and must be affirmed.
All the Justices concurring.