## SPENCER *v.* McDOUGAL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF WISCONSIN.

No. 245. Argued April 3, 1895. — Decided June 3, 1895.

By the order of the Commissioner of the General Land Office of June 12, 1856, the land in controversy in this case was withdrawn from preëmption or sale; and the validity of that order was not affected by the fact that the order covered more land than was included in the grant by Congress which caused its issue.

THE case is stated in the opinion.

*Mr. Louis D. Brandeis* for plaintiff in error. *Mr. Edwin H. Abbot, Mr. Howard Morris,* and *Mr. William H. Dunbar* were on his brief.

*Mr. George G. Greene* and *Mr. A. B. Browne* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

This was an action of ejectment brought by the plaintiff in error, plaintiff below, in the Circuit Court of the United States for the Western District of Wisconsin, to recover possession of the east half of the southwest quarter and the east half of the northwest quarter of section number seven (7), in township number forty-seven (47) north, of range number four (4) west, in the county of Ashland and State of Wisconsin.

The land, found by the jury to be worth sixteen thousand dollars, is situated within the limits of the city of Ashland, more than six and less than ten miles from the Bayfield branch of the Chicago, St. Paul, Minneapolis and Omaha Railroad Company, and also within ten miles of the Wisconsin Central Railroad Company. The title of the plaintiff rests upon an agreement between the two railroad companies settling all differences between themselves as to the lands within the place limits of each road, a patent from the State of Wisconsin to the Omaha company in pursuance of such agreement, and a deed from the latter to himself.

The same questions arise in this case as in that just decided, *Wisconsin Central Railroad Co.* v. *Forsythe, ante,* p. 46, and it is unnecessary to enter into any detailed statement of the facts concerning the two land grants, or a discussion of the questions arising thereon. Obviously, as the land in controversy was within the place limits of each road, it either passed wholly to the Omaha company or in equal moieties to the two, and in the latter event the agreement referred to transferred all rights to the Omaha company.

As against this, the defendant offered evidence that on May 3, 1858, and June 16, 1858, respectively, two preëmption declaratory statements were filed in the local land office, one in respect to one-half of the tract and the other in respect to the remainder, and contends that up to those dates there had been no valid withdrawals of any lands by the land department, and, as a consequence, that these preëmption claims attached to the land and excluded it from the operation of the grant. It may be remarked, in passing, that it does not appear that

any attempt was ever made to prove up or acquire title under and in accordance with these declaratory statements. But the contention is that, by the simple filing of the statements, the land was excluded from the operation of the grant made by either act.

We are unable to assent to this contention. On May 29, 1856, the Commissioner of the General Land Office telegraphed to the local land officers of the district in which the land is situated to suspend from sale and location all lands in the district. This was prior to the passage of the act of 1856. On June 12, nine days after its passage, the Commissioner wrote to the same officers, referring to his telegraphic despatch, and saying that the object of the withdrawal thus ordered was to protect from sale the lands granted to the State by a bill which had passed both houses of Congress, though not then approved by the President. But, it having been approved on June 3, he directs the continuance of the withdrawal. On October 26, 1856, he again wrote to the local land officers that upon the filing in their office of a duly certified map of the line of route as definitely fixed they " will, without waiting for further instructions from this office, cease to permit locations by entries or preemption, or for any purpose whatever of the lands within fifteen miles of said route," and on March 1, 1859, which was after the filing of these declaratory statements, he sent a letter, enclosing a diagram of the lands in their district with the line of route as definitely selected designated thereon, and again notified them to withhold from sale all lands within the indemnity limits. The only objection which can be made to the order of June 12, 1856, which was after the passage of the act, is that the Commissioner withdrew too much land, to wit, all land in the district, but that was a matter for the determination of the land department, and cannot be revised or disregarded by the courts.

*Walcott* v. *Des Moines Co.*, 5 Wall. 681, is in point. In August, 1846, Congress granted to the Territory of Iowa five alternate sections of the public lands, on each side of the Des Moines River, to aid in improving its navigation. It was a disputed question whether the grant terminated at the mouth

of the Raccoon Fork, or extended along the whole length of the river to the northern boundary of the State. The land department ordered that lands the whole length of the river within the State should be withdrawn from sale. In the course of subsequent litigation it was decided by this court that the grant terminated at the mouth of the Raccoon River. But in the case cited it was held that the withdrawal by the land department of lands above the mouth of the Raccoon River was valid, and that a subsequent railroad grant, with the ordinary reservation clause in it, did not operate upon lands so withdrawn. If a withdrawal of land beyond the terminus of a grant can be sustained, as it was in that case, equally so should be one made in anticipation of the locations of two lines of road, which locations were as yet undetermined, and might be such as to bring almost any portion of the lands withdrawn within the indemnity limits of the grant.

The order of June 12, 1856, was never set aside. The letter of October 26, 1856, simply gave authority for a reduction in the area of the withdrawn territory upon the filing of a map of definite location, and that of March 1, 1859, forwarded a diagram showing the line of definite location of a part of one of the roads aided, and directed the continued withdrawal of land within the indemnity limits as disclosed thereby, but neither of them set aside the withdrawal of June 12, 1856, or in any other way affected it. These declaratory statements were of no validity; the land was then withdrawn from preemption or other sale, and withdrawn for the purpose of satisfying the grant to the State of Wisconsin.

*The judgment of the Circuit Court will, therefore, be reversed, and a new trial ordered.*

The CHIEF JUSTICE took no part in the consideration and decision of this case.