MERRILL et al. v. CHICAGO, ST. P., M. & O. R. CO.

(Circuit Court of Appeals, Seventh Circuit. October 7, 1895.)

No. 219.

PUBLIC LANDS—WITHDRAWAL FROM SETTLEMENT.

Congress, by act of June 3, 1856, made a grant of public lands to the state of Wisconsin in aid of the construction of a railroad. By orders made in June and September, 1865, and in 1866, after an enlargement of the limits of the grant, the commissioner of the general land office directed the local officials to suspend from sale and location the lands within the limits of the grant. On August 17, 1887, the secretary of the interior revoked the orders of suspension by an order which provided that filings and entries should not be received until after giving 30 days' notice by advertisement. On September 9, 1887, and before any publication of such notice, the secretary, finding that the revocation had been made under a misapprehension, directed the local officers, by telegraph, to suspend the restoration of the lands until further orders, and on the same day wrote to the local officers, referring to the telegram, and directing them to continue the suspension until further orders. In March, 1888, and subsequently, the complainants settled on part of the lands within the limits of the grant, which were afterwards selected by and patented to the railroad company. Complainants offered to complete their title under the homestead laws, but were refused by the officers of the land department. *Held*, that the effect of the order of September 9th was to suspend that of August 17th, and wholly to withdraw the lands from settlement, and that the complainants accordingly acquired no rights in the lands by their settlement thereon.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

This was a suit by Edward D. Merrill, Romain Shier, Amos Houlton, Nathaniel Crockett, Horatio Houlton, and Joseph Cagnon against the Chicago, St. Paul, Minneapolis & Omaha Railroad Company to cancel a patent for certain lands and restrain the prosecution of actions of ejectment. The circuit court dismissed the bill. Complainants appeal. Affirmed.

The congress of the United States on the 3d day of June, 1856, granted to the state of Wisconsin in aid of the construction of a railroad "from Madison to Columbus, by way of Portage City, to the St. Croix river or lake, between townships 25 and 31, and thence to the west end of Lake Superior, and to Bayfield," every alternate section of land designated by odd numbers for six sections in width on each side of the proposed railroad. 11 Stat. 20. Upon the passage of the act of June 3, 1856, the commissioner of the general land office directed the register and receiver of the local land office to suspend from sale or location, until further orders, all the land in their district. In October, 1856, a like further order was issued, that, upon the filing in the land office of a duly-certified map of the line of route as definitely fixed of any of the roads referred to in the act mentioned, they should "cease to permit locations by entries or pre-emption, or for any purpose whatever, of the land within fifteen miles" of the route of the proposed railway. The location

of the part of the road between St. Croix river or lake and West Superior was definitely fixed, and the map thereof filed, pursuant to the act of congress, on the 2d day of March, 1858, and of the Bayfield branch on July 17, 1858. On May 5, 1864, congress enlarged the place grant to 10 and the indemnity grant to 20 miles. 13 Stat. 66. On February 28, 1866, the commissioner of the general land office directed the withholding from sale and location, pre-emption settlement, or homestead entry, of the odd-numbered sections of land within both the 10 and 20 mile limits of the located line of the railway and its Bayfield branches. On August 17, 1887, the secretary of the interior revoked all orders withdrawing from market land within the indemnity limits, and authorized immediate settlement upon any of such lands, except those covered by approved selections. This order contained the following provision: "The order of revocation herein directed shall take effect as soon as issued, but filings and entries of the lands embraced herein shall not be received until after giving notice of the same by public advertisement for a period of thirty days, it being the intention of this order that, against actual settlement hereafter made, the orders of the department withdrawing said lands shall no longer be an obstacle." This order was made in the belief that the railroad company had received all the lands to which it was entitled under the acts of congress. Upon representation that the department was in error in that regard, the commissioner of the general land office, under instructions from the secretary of the interior, on the 9th day of September, 1887, and before any publication of notice under the order of August 17, 1887, issued the following order to the local office at Ashland: "As the right of the Chicago, St. Paul, Minneapolis & Omaha Railroad Co. to indemnity lands will soon be adjusted, by direction of the acting secretary of the interior you will suspend the restoration of such lands until further orders. This will apply to both main line and Bayfield branches. Instructions by mail." On the same day the commissioner wrote to the officers of the local land office as follows: "Referring to my telegram of this date directing the suspension of the restoration and of the indemnity selections of the Omaha Company, I have to inform you that said action was taken under instructions from the Hon. acting secretary of the interior, pending the final adjustment of said company's selections, which will soon be completed. You will accordingly continue the suspension until further orders." Subsequently the secretary of the interior, upon consideration of the claims of the railroad company, adjudged that it was entitled to indemnity, and directed the commissioner to readjust the grant in accordance with his ruling. The company was thereupon allowed as indemnity some 9,300 acres on the branch lines, and some 37,500 acres for loss at the junction of the main and branch lines, and in December, 1890, patents were issued for such lands, which included the lands in controversy here. The appellants, between the months of March and July, 1888, respectively settled upon certain of the lands within the indemnity limits which were granted to the company by patent in 1890. The lands so settled upon had not, at the time they were so entered upon by the appellants, been selected by the railroad company, but were subsequently selected by it. The appellants have never perfected their claims to the land, but allege by their bill that they were "ready and willing, and ever since have been and now are willing and ready, to make and file with the register and receiver of said local land office the affidavit, and to pay the fees, and to do and perform all other acts and things required by law in order to acquire the title to said lands under the homestead laws of the United States, but on application to said register and receiver to make and file the affidavit and pay the fees required by law in such cases, the said register and receiver refused to receive the same, and referred your orators to the instructions contained in said circular in respect thereto, and informed your orators that no filings or entries could be received at that office until after thirty days' notice had been given by publication of the said order of the secretary of the interior revoking said orders of withdrawal; and for that reason, and that only, your orators did not make and file the affidavit and pay the fees as required by law in making a homestead entry. That your orators continued to reside upon said lands severally so settled upon by them, and ever since have and still do reside upon the same, and have made clearings, erected buildings, and made other

valuable improvements thereon, all the time waiting for the publication of the notice when their entries and filings would be received at said local land office. But your orators allege that no such notice was published or given, and that your orators had no opportunity to make and file the required affidavit and pay the required fees under the said homestead laws, until after said lands had been patented to the said defendant, as hereinafter stated." The bill is filed to restrain the threatened prosecution by the railroad company 'of writs of ejectment to obtain possession of the lands, and prays the court to cancel and annul the patent issued to the company, that the complainants "may severally complete and perfect their said homestead settlement, claim, and entry, and acquire the title thereto under the homestead laws of the United States." The court below dismissed the bill for want of equity, from which decree this appeal is taken.

J. M. Gilman and I. C. Sloan, for appellants.
George G. Green, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after stating the facts, delivered the opinion of the court.

Unless the lands in question were open to settlement, and were subject to be taken under the homestead and pre-emption laws of the United States, the appellants acquired no rights in the lands by their settlement upon them. If the order of revocation of August 17, 1887, was inoperative at the time of such settlement, the acts of the appellants in settling upon the lands were without authority of law, and of no effect as the foundation of any right to the lands. Riley v. Welles, unreported officially, but reported in 19 U. S. (Lawy. Ed.) 648; Wolcott v. Des Moines Co., 5 Wall. 681; Wolsey v. Chapman, 101 U. S. 755, 766; Bullard v. Railroad Co., 122 U. S. 167, 176, 7 Sup. Ct. 1149; Hamblin v. Land Co., 147 U. S. 531, 536, 13 Sup. Ct. 353; Spencer v. McDougal, 159 U. S. 62, 15 Sup. Ct. 1026. In the case of Wolcott v. Des Moines Co., supra, the withdrawal by the land department of lands beyond the terminus of a grant was sustained. In Spencer v. McDougal, supra, an order withdrawing from sale all lands within a certain district, in which lands had been granted in aid of the construction of a railroad, defeated the preemption of land thus withdrawn, although more was withdrawn than necessary for the purposes of the grant. The question of the rights of the appellants therefore hinges upon the proper construction of the order of the commissioner of the land department of September 9, 1887. It is insisted for the appellants that the effect of this order was merely to suspend the publication of the 30-days notice of the time when filings and entries would be received at the local land office; that the order did not suspend the right of settlement, or that at most the suspension of the right of settlement was limited to lands which had theretofore been selected by the company, which selections had theretofore been approved, or were then awaiting approval, by the department. We cannot concur in this contention. It is evident from the action of the department that the order of August 17, 1887, revoking the orders withholding these lands from market, was issued under misapprehension of the rights of the company. The error was sought to be rectified by a revocation of that

order, and a restoration of the original order of withdrawal from market pending the settlement of the claims of the railroad company. The telegraphic order of September 9th directs the local officers "to suspend the restoration of such lands until further order." The written communication of the same date refers to the telegraphic order, and states that the action was taken pending the final adjustment of the company's selection of lands. It speaks of the telegraphic order as one "directing the suspension of the restoration and of the indemnity selections of the Omaha Company," and instructs the officers, "You will accordingly continue the suspension until further orders." The department recognized the fact that its action in issuing the order of August 17th was inadvertent,—that the claims of the company were still unadjusted,—and it sought to revoke the action which it had taken in the belief that they had all been adjusted, and that the company had received all the lands to which it was entitled. Undoubtedly the commissioner sought simply a revocation of the order of August 17th. Such being the manifest and only object to be attained, we would not look for an order suspending merely the publication of the notice of time for receiving filings and entries that did not also suspend the right of settlement upon lands. If settlement upon lands within the indemnity limits were permitted, great difficulty would be created with respect to selections by the company, while the suspension merely of filings and entries would only concern the consummation of inchoate rights, and could be controlled by the action of the department. The construction contended for would not accomplish the object that the commissioner of the land office had in view. Nor do we think that the language of the order is subject to the interpretation claimed by the appellant. The telegraphic order directs the suspension of the restoration of the indemnity lands. The language includes all lands within the indemnity limits subject to selection by the company if and when its claim should be passed upon and allowed. The letter of the same date, referring to the telegraphic order, speaks of it as directing "the suspension of the restoration and of the indemnity selections." This expression is clearly inadvertent, and as shown by the secretary of the interior in Shire v. Railway Co., 10 Land Dec. Dep. Int. 85, meaningless, if literally interpreted. This was the practical construction of this order by the department in the administration of its duties, and should be followed by the courts unless there be cogent and clear reasons compelling to the contrary. U. S. v. Moore, 95 U. S. 760, 763. Our judgment of the proper construction to be placed upon this order concurs with that placed upon it by the department, and we are clear in opinion that the effect of the order was to suspend the order of August 17th, and wholly to withdraw these lands from settlement pending the adjustment of the claims of the railroad company. It necessarily results from this conclusion that these lands were not open to settlement by the appellants. Their settlement upon them, whatever its character, was not made until long after the order of September 9th, and at a time when the lands were not subject to be acquired by them, and they have therefore obtained no right to them. We see nothing

in the opinion of the supreme court in Railroad Co. v. Forsythe, 159 U. S. 46, 15 Sup. Ct. 1020, decided since the argument of this case, and to which our attention has been called by counsel, which affects the rights of the parties here. It is urged that within that decision the Omaha Company could not rightfully select the lands in controversy as indemnity lands, because they are included within the place limits of the grant to the Wisconsin Central Railroad Company. No facts are disclosed by this record which bring this case within that decision, and if the facts are as claimed we are at a loss to understand that the rights of the appellants would be thereby strengthened. If the lands were not subject to selection by the Omaha Company, or could be rightly claimed by the Wisconsin Central Company, or if the equitable right to the lands still remains in the United States, they were still not subject to settlement by the appellants under the law, because under the order they were withdrawn from the market, and the appellants certainly acquired no rights in the lands, and are in no position to gainsay the grant of them by the government to the Omaha Company. It becomes unnecessary therefore for us to consider the very interesting questions argued at the bar, whether the court can set aside a patent issued by the government without the presence of the United States as a party, when the effect of such judgment would be to cause the title to revert to the government, and whether the appellants, without having taken proper proceedings to perfect their supposed rights in the lands, could maintain the bill. The decree will be affirmed.